United States District Court
Southern District of Texas

**ENTERED**

June 03, 2026

Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| Travelers Home and Marine Insurance Company, | § § § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action H-23-3318 |
| | § | |
| Larry Price, | § | |
| *Defendant*. | § | |

**MEMORANDUM AND ORDER
ON PLAINTIFF'S MOTION TO COMPEL SETTLEMENT**

Pending before the court is Plaintiff Travelers Home and Marine Insurance Company's Motion to Compel Settlement. ECF No. 60. The parties consented to the jurisdiction of the undersigned magistrate judge for all purposes, including entry of final judgment. ECF No. 10. Plaintiff's Motion to Compel Settlement is **DENIED**.

### 1. Procedural Posture

Travelers Home and Marine Insurance Company (Travelers) sued Larry Price on September 6, 2023, seeking declaratory judgment and recission of an insurance contract. Travelers had issued an insurance policy to Price to cover a marine vessel. Price later stated that the vessel had been stolen, and he submitted a claim to Travelers to cover the theft. Travelers denied the claim because of an alleged misrepresentation that Price made when he applied for the policy. Price stated that he had not previously suffered a "boating loss," which Travelers discovered was not true. Travelers initiated this lawsuit, seeking recission of Price's insurance policy, as well as a declaration that Price had made material misrepresentations in his application that precluded coverage for the theft.

In the year after the case was filed, the court entered various ministerial, procedural, and discovery orders. On October 16, 2024, the parties filed a "Joint Notice of Settlement," stating that they had "reached a settlement in principle" and were "negotiating the terms of a release." ECF No. 39. Based on the Notice of Settlement, the court entered an order that accomplished three things: it dismissed the case with prejudice, it allowed the parties to move for reinstatement by January 6, 2025 (about two months after the order was entered), and it ordered that the court would retain jurisdiction to enforce the settlement. ECF No. 40.

There was no activity on the docket until March 4, 2025— nearly two months after the reinstatement deadline—when Travelers filed its first Motion to Reinstate Action and Compel Settlement. ECF No. 41. In that motion, Travelers explained that the parties had reached a settlement agreement, but Price refused to sign it. *Id.* at 1. Travelers argued that Price should be compelled to comply with the settlement agreement that they reached. *Id.* Without the assistance of counsel, Price filed his own Motion to Reopen the Original Case, ECF No. 42, and a Response to Travelers' motion, ECF No. 43. In his Motion to Reopen, Price stated that the settlement agreement that Travelers was seeking to enforce was "never discussed with Defendant Larry Price and his attorney." *Id.* at 1. Price likely meant that he and his attorney had not discussed the agreement between themselves, because in the next sentence, Price states that the "Final settlement was only discussed between the plaintiff's attorney and defendant's attorney." *Id.* Among other things, Price explained that he did not sign the settlement agreement because he had rejected its terms. *Id.* Price's Response to Travelers' motion is similar to his Motion to Reopen, except that he adds that he was threatened with criminal prosecution for refusing to settle the case. ECF No. 43. Thereafter, Price's counsel withdrew from the case. ECF No. 51.

On August 27, 2025, the court held a hearing on the pending motions. At the hearing, the court explained that the preliminary question before the court was whether any agreement had been reached. ECF No. 56 at 4. The court further explained that the pending motions were not supported by evidence sufficient for the court to resolve that preliminary issue. *Id.* The court denied both motions but allowed Travelers to file a single motion to enforce the settlement agreement supported by "evidence showing the existence, terms, and enforceability of the settlement agreement." ECF No. 54.

Travelers filed its second Motion to Compel Settlement on October 13, 2025. ECF No. 60. The following month, the court held a hearing on the motion. At the hearing, the court discussed the many documents that had been attached as evidence and expressed concern that Price's counsel appeared to have entered into a settlement agreement without Price's authority. ECF No. 66 at 10. The court ordered further briefing on the issue of "whether there is a settlement agreement that can be enforced against Defendant, in light of the assumption that Defendant's former attorney acted without Defendant's authority. ECF No. 64.

Travelers' Motion to Compel Settlement is now fully briefed. The court has before it sufficient evidence to decide the issue. While the parties dispute the conclusions that should be drawn from the evidence, there do not appear to be any factual disputes.

### 2. *Events Leading to Dismissal of this Case*

The parties have attached to their briefing declarations by the lawyers that were responsible for attempting to settle this case as well as numerous emails that were sent between the lawyers and between Price and his counsel. The court will next walk through those emails in roughly chronological order. In this discussion "Elmasri" refers to Ramy Elmasri, Travelers' counsel

and "Contreras" refers to Lindsay Contreras, Price's counsel. Communications between Contreras and Price are italicized.

| | |
|---|---|
| June 6, 2024 | *Price informed Contreras that he wanted to settle the case. He proposed that Travelers pay the attorney's fees he had thus far incurred and, in exchange, he would not pursue any further litigation. ECF No. 60-3 at 7.* |
| June 10, 2024 | Contreras presented a settlement demand to Elmasri seeking $15,000 and mutual releases of liability, with a promise of dismissal with prejudice, and that Price would accept denial of his insurance claim. ECF No. 60-2 at 9. |
| June 23, 2024 | Elmasri stated that Travelers accepted all terms except payment of $15,000. ECF No. 60-2 at 8. |
| June 27, 2024 | *Contreras communicated Travelers' settlement proposal to Price. ECF No. 60-3 at 18.* |
| | *Price responded to Contreras, stating, "Tell them we will move forward with the case." ECF No. 60-3 at 20.* |
| July 15, 2024 | *Contreras emailed Price to confirm that he "would like to accept the walk-away deal proposed by Travelers so long as you can still go after Goosehead." ECF No. 60-3 at 22.* |
| | *Price stated "Yes I confirm this email." ECF No. 60-3 at 28.* |
| July 16, 2024 | *After an exchange of emails discussing the settlement proposal and other details, Price emailed Contreras to say that he would "go ahead with the walk away," and stated, "I think I should get my payment of over 1600 back as well." ECF No. 60-3 at 31.* |

4

|  | *Contreras stated that she would "proceed." ECF No. 60-3 at 31.* |
|---|---|
|  | Contreras communicated to Elmasri that Price accepts the proposed terms of the walk-away deal. She added this sentence, which is central to the current dispute: "**One minor additional note, I believe we also in the past talked about refund of Mr. Price's premium under the policy (roughly \$1,600) which you [Elmasri] indicated may be required by law – if we could please address this as part of settlement too.**"[1]   ECF No. 60-2   at 8   (emphasis added). |
| July 22, 2024 | Contreras asked Elmasri whether they needed to discuss the settlement any further. ECF No. 60-2 at 7. |
| July 23, 2024 | Elmasri stated, "Just waiting on my client to approve the terms of the release. Once I have approval I will send over for your review." He did not mention the \$1,600. ECF No. 60-2 at 7. |
| July 24, 2024 | *Contreras stated to Price that Travelers was aware he wanted to settle and that they were "in the process of preparing a written release . . . for us to review." ECF No. 60-3 at 38.* |
| Aug. 14, 2024 | Contreras wrote to Elmasri to inquire about the status of the settlement, again with no mention of the \$1,600. ECF No. 60-2 at 6–7. |

---

[1] As will be discussed, Travelers takes the position that "Price's counsel *never* indicated that return of Price's insurance premiums was a material condition to Price accepting the settlement. Rather it was expressly understood that *no money* would be exchanged in this settlement." ECF No. 60-2 at 2 (¶ 12).

|  | Elmasri sent Contreras an email with an attached copy of a proposed settlement agreement. ECF No. 60-2 at 6. It is not clear to the court exactly which version of the proposed settlement agreement Elmasri sent, but an unsigned copy of a settlement agreement follows the August 14 email string, and it does not contain any mention of the $1,600. ECF No. 60-3 at 46–55. |
|---|---|
| Sept. 10, 2024 | Contreras informed Elmasri that she was working on the settlement agreement and would "circulate [her] revisions this week." ECF No. 60-2 at 6. |
|  | Elmasri wrote to Contreras asking, "You ok with a Joint Notice of Settlement so that we can get off the docket?" ECF No. 60-2 at 12. |
| Sept. 17, 2024 | Jacquie Goldman of the Goldman Maritime Group sent a draft of the Notice of Settlement to Contreras, copying Elmasri. ECF No. 60-2 at 11. |
| Sept. 18, 2024 | Contreras emailed Elmasri a markup of a settlement agreement, **which included a provision for Price to be refunded his entire premium in the amount of $1,646**. ECF No. 60-3 at 56, 61. |
|  | Elmasri responded to Contreras, stating, "I will discuss with Travelers and get back to you." ECF No. 60-3 at 68. |

The court notes here that the parties had not yet reached an agreement and that Contreras had explicitly requested refund of the premium. Elmasri then presented the settlement demand, including refund of the premium, to his client.

The timeline continues.

6

| Oct. 15, 2025 | Contreras sent back the Notice of Settlement with minor modifications for Goldman to file. |
| Oct. 16, 2024 | Elmasri wrote to Contreras, stating, "I'm following up re: our discussion yesterday and will get back to you shortly." ECF No. 60-2 at 10. |
| Oct. 25, 2024 | Elmasri informed Contreras that he had "run into an issue regarding the return of the premium." He explained that Travelers had already canceled Price's insurance policy, and Travelers could not return the premium without reinstating the policy, which it did not want to do. He added, "[Travelers is] fine with the deletion of the indemnification language." |

The court notes a few things at this point. Contreras had requested return of Price's premium, and it appears that Elmasri followed up with Travelers about that request. Travelers refused the request. At the same time, Travelers offered to remove the indemnification language from the settlement agreement. It is very difficult to understand how either of the lawyers could have believed the case was settled at this point. There was an outstanding demand for money, which Travelers had refused, and the parties were still discussing the terms of the agreement.

The court continues with the discussion of the parties' emails.

| Nov. 4, 2024 | The court dismissed the case with prejudice based on the parties' Notice of Settlement. ECF No. 40. It gave a deadline of January 6, 2025, to move for reinstatement. *Id.* |
| Dec. 16, 2024 | After several emails indicating that Contreras and Elmasri had discussed the case, Contreras sent a lengthy email |

to Elmasri with the subject line "Travelers Return of Premium." She referred to and attached a November 2023 email from a different lawyer representing Travelers who had proposed return of the premium. Contreras explained that she had agreed to dismissal of the case because she believed Price would receive his premium back. She also cited Texas law and the insurance policy for the proposition that cancelation of an insurance policy requires return of the premium. She concluded, "For these reasons, I urge Travelers to consider returning my client's small insurance premium **so that settlement can conclude**." ECF No. 60-2 at 17 (emphasis added).

Dec. 20, 2024    Contreras followed up with Elmasri to see whether he had heard anything from Travelers. ECF No. 60-2 at 17

Elmasri stated, "Nothing yet. I'll follow up on Monday." ECF No. 60-2 at 16.

Dec. 30, 2024    Contreras again asked Elmasri for an update and said, "I was hoping we could get this one signed/finished up before the Court's deadline to reinstate the case." ECF No. 60-2 at 16.

Jan. 6, 2025    The deadline for reinstatement of the case passed. ECF No. 40.

Jan. 7, 2025    Elmasri attached a proposed settlement agreement to an email to Contreras, asking, "How's this?" He also stated that "Travelers still doesn't want to do the premium return. Maybe he can get it from Goosehead." ECF No. 60-2 at 15. The version of the settlement agreement following the email string does not

8

include return of the premium. ECF No. 60-3 at 91–101.

Jan. 23, 2025    Still under the subject line "Travelers Return of Premium," Contreras emailed back several requested modifications to the settlement agreement but made no mention of the premium. She stated, "If you make these changes and circulate a final, I will have my client sign it." ECF No. 60-2 at 15. The version of the agreement that Contreras attached with her edits does not contain any mention of the premium. ECF No. 60-3 at 106–16.

Feb. 5, 2025    After Elmasri and Contreras exchanged several emails discussing changes and modifications to the agreement, Contreras sent an email stating, "I intended to say this is a final copy that everyone can sign." ECF No. 60-2 at 14.

*Contreras emailed Price explaining the terms of the settlement agreement. About return of the premium, she stated that she could not convince Travelers to do that, despite its earlier offer to do so. She explained that she and others at her firm "decided amongst ourselves that we would credit your invoice for $1,600 despite Traveler's unwillingness to provide payment. This puts you in the place you hoped to be when we last discussed settlement in this case (i.e. using the refunded premium as a credit against our invoices)." ECF No. 60-3 at 150.*

*Price responded to Contreras stating that he would not sign the agreement without Travelers "returning the 1600." He stated, "Your firm does not need to lose any money on my account." He said that*

9

|  | *he "absolutely refuse[d] to sign without the 1600 returned to your firm [and] I didn't [do anything] wrong and they have cost me enough money and the 1600 is the line drawn in the sand." ECF No. 60-3 at 166.* |
|---|---|
| Feb. 10, 2025 | Elmasri sent an email stating "Please see the SA executed by Travelers. Once we have Mr. Price's signature, we can finally close this one out." ECF No. 60-2 at 13. Attached to Travelers' brief is a copy of a Settlement and Release Agreement signed by Travelers on February 10, 2025, which makes no mention of the return of Price's premium. ECF No. 60-2 at 19–29. |
| Feb. 17, 2026 | Elmasri wrote to Contreras stating that he had been contacted by other counsel for Price who were seeking to pursue Price's claims. He asked Contreras about the status of the settlement agreement and explained that he did not want to move to enforce the settlement agreement. ECF No. 60-2 at 15. |

### 3. *Legal Standards*

Travelers brought this lawsuit under general federal maritime law and argues that federal law governs whether the court should enforce the settlement agreement in this case. ECF No. 60 at 5. Federal law determines whether a settlement agreement is valid in cases where the substantive rights and liabilities of the parties derive from federal law. *Mid-South Towing Co. v. Har-Win, Inc.*, 733 F.2d 386, 389 (5th Cir. 1984). On the other hand, state law may control when there is no substantial federal interest or policy that would require application of federal law. *Diaz v. Rio Grande Res. Corp.*, No. SA-05-CA-209-XR, 2006 WL 3337520, at *2 (W.D. Tex. Nov. 15, 2006). While this case

involves a federal maritime insurance contract, it is not at all clear that federal law would control the substantive issues. *Cf. Albany Ins. Co. v. Anh Thi Kieu*, 927 F.2d 882, 888–90 (5th Cir. 1991) (engaging in a lengthy and complex analysis and ultimately applying Texas law in the context of a maritime insurance contract).

The parties have given little attention to the question of whether state or federal law applies here. Fortunately, there do not appear to be any material differences between the two sources of law as they apply to the critical issues in this case. There is certainly a difference between the writing requirements for an enforceable settlement agreement. Federal law does not require settlement agreements to be reduced to writing, *EEOC v. Philip Services Corporation*, 635 F.3d 164, 167 (5th Cir. 2011), while Texas Rule of Civil Procedure 11 does. This case does not turn on whether the settlement agreement was reduced to writing. The critical questions in this case relate to Price's counsel's authority to settle the case.

Federal law and Texas law apply virtually identical and well-known agency principles that govern an attorney's authority to settle a client's case. An attorney may not settle a client's case without express authority. *Rio Grande*, 2006 WL 3337520, at *2 (citing *Mid-South Towing*, 733 F.2d at 389, which applied federal law to the question). However, an attorney of record is presumed to have authority to settle a client's case, and a judgment based on a settlement agreement entered into by the lawyer will be set aside only upon affirmative proof that the attorney had no right to enter into the agreement. *Id.*

A settlement agreement entered into by an attorney who lacked authority will not be enforced. *Rio Grande*, 2006 WL 3337520, at *3. Authority may either be express or implied. *Id*; *Mid-South Towing*, 733 F.3d at 391. Actual authority is that which

11

is intentionally conferred by the principal on the agent, or that the principal allowed the agent to believe was conferred, while apparent authority exists when the principal's conduct toward third parties allows those third parties to believe that the principal has the authority to act on behalf of the principal. *Rio Grande*, 2006 WL 3337520, at \*3; *Fennell v. TLB Kent Co.*, 865 F.2d 498, 502 (2d Cir. 1989) (applying federal law). In any event, apparent authority is not created merely by retaining a lawyer. *Fennell*, 865 F.2d at 502. And the agent cannot create apparent authority by his own actions or representations. *Id.*

Procedurally, "when opposition to enforcement of the settlement is based not on the merits of the claim but on a challenge to the validity of the agreement itself, the parties must be allowed an evidentiary hearing on disputed issues of the validity and scope of the agreement." *In re Deepwater Horizon*, 786 F.3d 344, 354 (5th Cir. 2015).

### 4. Analysis

The court held a hearing on the pending motion and allowed the parties to submit evidence. On review of the evidence, it does not appear that there is any dispute about the facts. The only dispute is about the inferences and conclusions that may be drawn from those facts. Accordingly, the court proceeds without conducting a full evidentiary hearing.

The facts set out in exhaustive detail above reveal that Price never agreed to settle without receiving a refund of his premium. Contreras knew that it was important to Price that he receive his premium refund, yet she agreed to accept as final a settlement agreement that did not include the refund. Her final emails with Price show that she unilaterally decided to credit Price's invoice with her office rather than let the settlement fall apart based on

such a small amount of money. But that was not her choice. She lacked authority to settle the case.

Travelers argues that Contreras "never" indicated that return of the premium was a material term of the settlement. The court disagrees. Contreras asked that the refund be made part of the settlement, she sent a version of the settlement agreement with a redline edit that included return of the premium, and there was an entire email string devoted to discussing return of the premium. For those same reasons, Travelers' argument that it never understood that Price's agreement was contingent upon return of the premium is disingenuous at best. There was a lengthy back and forth about the premium. Elmasri took the proposal to his client. Ultimately, Travelers refused to return the premium. But there is no question that return of the premium was holding up closing on the settlement for quite some time.

Contreras finally relented on the premium, but never with her client's blessing. She sent a final version of the agreement to Travelers without any mention of the premium, which Travelers accepted. The issue is whether Contreras had apparent authority to do that. She did not. Price was somewhat relentless in his pursuit of the premium refund. He never manifested to any third party, and certainly not to Contreras or Elmasri, that he would accept a settlement that allowed Travelers to forego return of the premium. It was clearly important to Price.

Here, there is affirmative proof that Contreras had no right to enter into an agreement with Travelers. At no point did Price agree to the proposed settlement agreement to which Contreras referred as the "final copy." Contreras had no actual or apparent authority to accept a version of the agreement that omitted return of Price's premium. Accordingly, there is no settlement agreement to enforce.

13

### *5. Conclusion*

For these reasons, Plaintiff's Motion to Compel Settlement, ECF No. 60, is **DENIED**.

Signed at Houston, Texas, on June 3, 2026.

_____

Peter Bray
United States Magistrate Judge